HONORABLE RICHARD A. JONES

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>AARON MICHAEL SCOTT,<br><br>        Defendant. | No: 3:18-CV-05802-RAJ |

## CONSENT ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT AARON MICHAEL SCOTT

## I.     INTRODUCTION

On October 3, 2018, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendant Aaron Michael Scott ("Scott") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2018), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1-190 (2019).  On September 27, 2018, the United States Attorney's Office for the Western District of Washington filed a related criminal action against Defendant Scott in this Court, *United States v. Scott*, No. 3:18-cr-5500-RBL-1 (the "Criminal Action").

## II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Scott without a trial on the merits or any further judicial proceedings, Defendant Scott:

1.      Consents to the entry of this Consent Order for Permanent Injunction and Other Equitable Relief Against Defendant Scott ("Consent Order");

2.      Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledges service of the summons and Complaint;

4.      Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018);

5.      Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6.      Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.      Waives:

(a)    Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2019), relating to, or arising from, this action;

(b)    Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201-253, 110 Stat. 847, 857-74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)    Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)     Any and all rights of appeal from this action;

8.      Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant Scott now or in the future resides outside the jurisdiction of this Court;

9.      Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10.     In the Criminal Action, Defendant Scott pleaded guilty to violating 18 U.S.C. § 1343 (2012), which prohibits wire fraud, and in connection with that plea, admitted the facts set out in his signed Plea Agreement, a copy of which is attached as Exhibit A to this Order, and those same facts are admitted as if set forth in this Order.  Defendant Scott also admits to all of the findings made in this Consent Order and all of the allegations in the Complaint;

11.     Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 49 of Part VI. in this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

12.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant Scott in any other proceeding.

## III.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the

entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.      FINDINGS OF FACT**

      **(i).      Parties to this Consent Order**

13.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

14.      Defendant Scott is a resident of Portland, Oregon.  At all relevant times, Scott was the sole owner, president, and secretary of his company, BMC Worldwide, Inc. d/b/a Blue Moon Coins ("Blue Moon"), which is now closed.  Defendant Scott has never been registered with the Commission in any capacity.  As noted above, Defendant Scott pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 (2012) in a parallel criminal case.  On April 5, 2019, Defendant Scott was sentenced to four years in prison.  On September 24, 2019, Defendant Scott was ordered in the parallel criminal case to pay $1,381,461.86 in restitution to the defrauded customers of Blue Moon.

      **(ii).      Defendant Scott and Blue Moon's Fraudulent Solicitation Scheme**

15.      From at least October 2013 through April 2014 (the "Relevant Period"), Defendant Scott and Blue Moon fraudulently solicited customers to purchase gold and silver ("precious metals") from Blue Moon and misappropriated customer money to pay for personal and business expenses.

16.      Defendant Scott and Blue Moon represented to members of the public that Blue Moon was a highly successful precious metals firm that sold and delivered precious metals to its customers.  Defendant Scott and Blue Moon made these representations, in part, through Blue

Moon's website, www.bluemooncoins.com ("Website").  Defendant Scott and Blue Moon used the Website to advertise Blue Moon's "years of experience . . . in the precious metal and collectible coin industry" and claim that Blue Moon had a network of worldwide contacts throughout the industry.

17.     Defendant Scott and Blue Moon also represented that Blue Moon had the ability to offer lower prices than Blue Moon's industry competitors.  The customer-friendly pricing was allegedly based on Blue Moon's "exclusive access to an extensive, well-established network of buyers and sellers."

18.     To further attract precious metals purchasers, Defendant Scott and Blue Moon claimed they maintained an inventory of precious metals in stock and would fulfill a customer's order from that inventory upon receipt of payment.  In other instances, Defendant Scott and Blue Moon instead claimed that they would fulfill customer orders by obtaining the precious metals from a third-party supplier.

19.     Defendant Scott and Blue Moon also stated that they were able to quickly ship precious metals to customers after placement of orders and receipt of customer funds.  In particular, the Website claimed that the average order fulfillment and shipping time for customer orders was twelve to fifteen business days.  In other instances, Defendant Scott and Blue Moon directly informed customers that delivery would be made in seven to thirty business days.

20.     In reality, Defendant Scott and Blue Moon did not maintain an inventory of precious metals sufficient to fulfill customer orders during the Relevant Period.  In many cases, Scott and Blue Moon made no effort to secure the precious metals needed to fulfill customer orders.

21.     Defendant Scott and Blue Moon knew the representations discussed above were false when they made them.  Rather than fulfill customer orders as promised, Defendant Scott and Blue Moon intended to and did misappropriate the vast majority of customer funds received during the Relevant Period.  Defendant Scott and Blue Moon engaged in a pattern of incurring obligations to customers while simultaneously lacking the funds and precious metals to meet the obligations.

22.     After customers made precious metals purchases from Blue Moon, Defendant Scott and Blue Moon concealed and prolonged their fraudulent solicitation scheme by continuing to make false representations.  To explain why customers had not received their orders, Defendant Scott and Blue Moon made excuses and attributed the delayed or missing orders to, among other things, weather issues, supplier problems, being "slammed," delayed armored trucks, and unspecified corporate changes.  Defendant Scott and Blue Moon also deflected customer complaints by promising partial shipments or shipping upgrades for unfulfilled orders.

23.     Defendant Scott and Blue Moon's representations regarding purported delays in delivery were false.  In many cases, Defendant Scott and Blue Moon had already misappropriated the funds associated with customer purchases by the time the excuses were made to the customers.

24.     Instead of disclosing that Blue Moon was failing to fulfill customer orders, Defendant Scott and Blue Moon continued to advertise and hold Blue Moon out as a legitimate precious metals supplier.  In those instances where customers canceled their orders and demanded refunds, Defendant Scott and Blue Moon typically ceased further communications with the customers.

### (iii).    Defendant Scott and Blue Moon Misappropriated Customer Funds

25.    During the Relevant Period, Defendant Scott and Blue Moon misappropriated approximately $1,381,000 from 140 customers in connection with their fraudulent scheme. Defendant Scott used customer funds from precious metals purchases to pay Blue Moon's operating expenses, refund disgruntled customers or fulfill other customer orders in the nature of a Ponzi scheme, pay unrelated debts, and invest in other businesses.

### (iv).    Defendant Scott Controlled Blue Moon

26.    During the Relevant Period, Defendant Scott was the President, Secretary, and sole owner of Blue Moon.  Defendant Scott made all financial and strategic business decisions for Blue Moon.

27.    Defendant Scott directed, among other things, that bank accounts be opened and contracts signed on behalf of Blue Moon.  Defendant Scott also directed the payment of Blue Moon's operating expenses, that customer funds be invested in other businesses, that customer funds be used to satisfy other financial obligations unrelated to customer purchases, the publication of information on the Website, and responses to customer inquiries.

28.    Defendant Scott knowingly induced Blue Moon's fraudulent acts by virtue of directing those fraudulent acts.

## B.    CONCLUSIONS OF LAW

### (i).    Jurisdiction and Venue

29.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C.

§ 13a-1 (2018), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

30.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Defendant Scott conducted business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred within this District.

**(ii).     Fraud by Misrepresentations and Omissions and Misappropriation of Customer Funds**

31.     By the conduct described in paragraphs 14 through 28 above, Defendant Scott and Blue Moon violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a)(1)-(3),17 C.F.R. § 180.1(a)(1)-(3) (2019), by intentionally or recklessly making false representations and omissions, in connection with a contract of sale of commodities in interstate commerce, including but not limited to:  (1) misrepresenting to customers that Blue Moon either had precious metals in stock, or would obtain the precious metals needed, to fulfill customer orders; (2) misrepresenting that customer orders would be fulfilled within specified time frames; (3) failing to inform customers that Blue Moon did not have the ability to fulfill customer orders; (4) failing to inform customers that Defendant Scott and Blue Moon were using customer money to pay for Blue Moon's operating expenses and Defendant Scott's personal and unrelated business expenses; and (5) failing to disclose to customers that Blue Moon was insolvent.

32.     By the conduct described in paragraphs 14 through 28 above, Defendant Scott and Blue Moon violated 7 U.S.C. § 9(1) (2018) and 17 C.F.R. § 180.1(a)(1)-(3) (2019), by misappropriating customer funds to pay for personal expenses, or expenses related to other

business ventures, or to purchase precious metals for other Blue Moon customers in the form of Ponzi payments.

33.     Defendant Scott controlled Blue Moon, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Blue Moon's act or acts in violation of the Act and Regulations; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), Scott is therefore liable for Blue Moon's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

34.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendant Scott will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.     PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

35.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a–1 (2018), Defendant Scott is permanently restrained, enjoined and prohibited from directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, intentionally or recklessly:  using, employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; making, or attempting to make, any untrue or misleading statement of a material fact or omitting to state a material fact necessary in order to make the statements made not untrue or misleading; and engaging or attempting to engage in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2019).

36.     Defendant Scott is also permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

b.      Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)) for his own personal account or for any account in which he has a direct or indirect interest;

c.      Having any commodity interests traded on his behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and/or

g.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.     RESTITUTION

37.     Defendant Scott shall pay restitution in the amount of one million, three hundred eighty-one thousand, four hundred sixty-one dollars and eighty-six cents ($1,381,461.86) ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

38.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendant Scott's customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments from Defendant Scott and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

39.     Defendant Scott shall make Restitution Obligation payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name "Defendant Aaron Michael Scott – Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant Scott and the name and docket number of this proceeding.  Defendant Scott shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

40.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendant Scott's customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.

41.     Defendant Scott shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendant Scott's customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendant Scott shall execute any documents necessary to release funds that he has in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

42.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing disbursement of funds to Defendant Scott's customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW Washington, D.C. 20581.

43.     The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Defendant Scott or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

44.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendant Scott who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to ensure continued

compliance with any provision of this Consent Order and to hold Defendant Scott in contempt for any violations of any provision of this Consent Order.

45.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant Scott's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

46.     In the Criminal Action, Defendant Scott has been sentenced to four years imprisonment and ordered to pay restitution in the amount of one million, three hundred eighty-one thousand, four hundred sixty-one dollars and eighty-six cents ($1,381,461.86) to the defrauded customers of Blue Moon in connection with the same conduct at issue in this action. For amounts disbursed to Blue Moon's customers as a result of satisfaction of any restitution ordered in the Criminal Action, Defendant Scott shall receive a dollar-for-dollar credit against the Restitution Obligation.  Within ten days of disbursement in the Criminal Action to Blue Moon's customers, Defendant Scott shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, copies of the form of payment to those customers.

47.     Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial payment of Defendant Scott's Restitution Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI.    MISCELLANEOUS PROVISIONS

48.    Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

> Charles Marvine
> Deputy Director, Division of Enforcement
> Commodity Futures Trading Commission
> 4900 Main Street, Suite 500
> Kansas City, MO  64112

All such notices to the Commission shall reference the name and docket number of this action.

49.    Change of Address/Phone:  Until such time as Defendant Scott satisfies in full his Restitution Obligation as set forth in this Consent Order, Defendant Scott shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

50.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

51.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

52.    Waiver:  The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in

14

this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

53.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant Scott to modify or for relief from the terms of this Consent Order.

54.     Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant Scott, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant Scott.

55.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

56.     Contempt:  Defendant Scott understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings, he may not challenge the validity of this Consent Order.

57.     Signatories: Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Order.

15

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Consent Order For Permanent Injunction And Other Equitable Relief Against Defendant Aaron Michael Scott forthwith and without further notice.

IT IS SO ORDERED this 17th day of December, 2020.

HON. RICHARD A. JONES
United States District Judge

CONSENTED TO AND APPROVED BY:

DocuSigned by:

Josephine Townsend

9B0C4DEF4985443...

Josephine C. Townsend on behalf of
Aaron Michael Scott
Date:_____12/16/2020_____

Jeff Le Riche

Jeff Le Riche
Chief Trial Attorney
Commodity Futures Trading Commission
Division of Enforcement
4900 Main Street, Suite 500
Kansas City, MO  64112
Telephone:  (816) 960-7700
Facsimile:  (816) 960-7751
jleriche@cftc.gov

Dated ____12/16/2020_____